# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

JUAN MARTINEZ and GUADALUPE
MARTINEZ,
        **Plaintiffs,**

-vs-

THE CITY OF BUDA, TEXAS;
OFFICER DEMERRIAL YOUNG; and
WAL-MART STORES TEXAS, LLC,
        **Defendants.**

**CAUSE NO.:
A-16-CA-1116-SS**

FILED
18 FEB 13 AM 8: 28
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

## O R D E R

      BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants the City of Buda (the City) and Officer Demerriel Young (Officer Young) (collectively the Buda Defendants)' Motion for Summary Judgment [#43], Plaintiffs Juan and Guadalupe Martinez's Response [#51] in opposition, and the Buda Defendants' Reply [#53] in support as well as Defendant Wal-Mart Stores Texas, LLC (Wal-Mart)'s Motion for Summary Judgment [#47], Plaintiffs' Response [#50] in opposition, and Wal-Mart's Reply [#52] in support. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

# Background[1]

On October 2, 2014, Plaintiffs, a married couple, went shopping at a Wal-Mart store located in Buda, Texas. Without her husband, Mrs. Martinez used a motorized scooter to move throughout the store. Floor Video 1; Floor Video 2. Mrs. Martinez placed a variety of items in the basket on her scooter. *Id.* One such item was a bunch of bananas. Floor Video 2 at 2:48–58.

As Mrs. Martinez continued shopping, she peeled a banana and ate it. *Id.* at 4:50–5:20. Mrs. Martinez also visited a vacant checkout aisle and grabbed an armful of plastic Wal-Mart shopping bags. *Id.* at 16:27–17:05.

Subsequently, after driving around the store for another period of time, Mrs. Martinez drove out an exit door without stopping to pay for the merchandise filling the basket of her scooter. Exit Video at 0:16–22. Two Wal-Mart employees stopped Mrs. Martinez and asked her to accompany them to the Asset Protection office (AP Office). *Id.* Mrs. Martinez followed the two employees to the AP Office on the scooter. *Id.*

Once in the AP Office, the Wal-Mart employees spoke with Mrs. Martinez and inventoried the merchandise in her scooter basket. Office Video at 0:00–6:30. Mrs. Martinez had exited the store with over twenty-five items in her basket. *See* Resp. Wal-Mart's Mot. [#50-1] Ex. A.8 (Basket Inventory). Mrs. Martinez informed the employees she had purchased some of the items in her basket at the in-store pharmacy and produced receipts for two items totaling $20.67 in value. *Id.* [#50-4] Ex. D (Receipts). However, Mrs. Martinez had exited the store

---

[1] The facts recounted here are drawn from the summary judgment record, including the parties' depositions and declarations as well as video recordings of Wal-Mart's surveillance footage and Officer Young's body camera footage. Buda Defs.' Mot. [#43] Ex. 2 (Police Records). The video clips offered as part of the Police Records include footage from Wal-Mart's Asset Protection Office (Office Video), Wal-Mart's exit (Exit Video), the Wal-Mart shopping floor (Floor Video 1, Floor Video 2), and Officer Young's body camera (Body Camera Video 1, Body Camera Video 2). On summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party, but in instances where the facts are evident from video recordings taken at the scene, the Court assigns these facts more weight. *Carnaby v. City of Hous.*, 636 F.3d 183, 187 (5th Cir. 2011).

without paying the majority of the items in her basket, items totaling over $160.00 in value. *See* Basket Inventory.

While Mrs. Martinez and the Wal-Mart employees were talking, Mr. Martinez arrived at the AP Office. Mrs. Martinez got off of her scooter and let Mr. Martinez into the AP Office. Office Video at 8:24–33. Although he wore a back brace, Mr. Martinez walked into the office without using a cane or scooter. *Id.* at 8:33–50. After Mr. Martinez entered, three Wal-Mart employees stood with Plaintiffs in the entrance way of the AP Office. *Id.* at 8:45. The Wal-Mart employees stood calmly listening to Mr. Martinez as he gestured emphatically at them. *Id.* at 8:45–9:36. Eventually, one of the Walk-Mart employees left the AP Office. *Id.* at 9:38. Plaintiffs and the other two Wal-Mart employees remained. *Id.*

The Wal-Mart employee who left the AP Office is later seen in the body camera footage of Officer Young, who was exiting a police patrol car parked outside of the Wal-Mart. Body Camera Video 1 at 0:00–50. The employee informed Officer Young Wal-Mart was seeking to press charges against Mrs. Martinez because she had exited the store with over $25 in unpaid-for merchandise. *Id.* The employee also commented Mr. Martinez was raising "nine kinds of hell." Buda Defs.' Mot. [#43-5] Ex. 5 (Guyer Decl.) at 157:16–158:25.

After this conversation, Officer Young entered the store and proceeded to the AP Office. Body Camera Video 1 1:01–09. As he walked inside, Officer Young passed Mr. Martinez, who was standing outside the AP Office. *Id.* Once Officer Young entered the AP office, he walked to the back of the office and turned to face Mrs. Martinez, who was seated on the scooter. *Id.* at 1:09–20; Office Video at 20:45. Officer Young greeted the Wal-Mart employees and Mrs. Martinez, and then Mr. Martinez entered the AP Office. Body Camera Video 1 at 1:19; Office Video at 20:47. Mr. Martinez had not been invited into the AP Office and stood blocking the

office's doorway. *Id.* Officer Young twice asked Mr. Martinez to "step outside." Body Camera Video 1 at 1:20. Mr. Martinez responded, "No sir, I am not going to do that." *Id.* at 1:22–26.

Officer Young then ordered Mr. Martinez to step outside and Mr. Martinez shouted back "I have done nothing wrong." *Id.* at 1:28–30. Officer Young replied, "I am asking you to step outside." *Id.* Mr. Martinez continued to refuse to leave the AP Office. *Id.* at 1:30–33; Office Video at 20:52–21:00. Officer Young interrupted, "I'm asking you to step outside. I just got here. And either you are going to step outside or I am going to place you outside and I am going to place you under arrest for interfering." *Id.* at 1:33–40. Mr. Martinez then said "go ahead." *Id.* at 1:40. Officer Young subsequently told Mr. Martinez to "turn around." Officer Young placed his hand on Mr. Martinez's stomach and tried to guide Mr. Martinez out the office door, but Mr. Martinez resisted. Office Video at 21:09–11; Body Camera Video 1 at 1:41–1:47. Mr. Martinez pushed Officer Young's hands away and pushed back against Officer Young in an effort to stay in the AP Office. *Id.* Despite Mr. Martinez's response, Officer Young continued to guide Mr. Martinez from the office by holding on to Mr. Martinez's arm. Office Video at 21:11. Officer Young walked forward toward the AP Office door and Mr. Martinez, propelled by Officer Young, walked sideways. *Id.* As the two men exited the office door, Mr. Martinez's feet slid out from under him and he fell to the ground. Office Video at 21:11–13.

On October 3, 2016, Plaintiffs filed suit in this Court against Officer Young, the City, and Wal-Mart. Compl. [#1]. Asserting claims under 42 U.S.C. § 1983, Plaintiffs allege Officer Young used excessive force against Mr. Martinez in violation of the Fourth and Fourteenth Amendments and failed to accommodate Mr. Martinez's disability in violation of the Americans with Disabilities Act (ADA). Am. Compl. [#10] ¶¶ 6.4–6.5. Plaintiffs also allege the City's inadequate policies and customs caused Officer Young's unlawful actions. *Id.* ¶¶ 6.1–6.3.

Finally, Plaintiffs claim Wal-Mart is liable for false imprisonment, the negligence of its employees, and negligent hiring, training, and supervision. *Id.* ¶6.6.

As the Buda Defendants, Officer Young and the City jointly moved for summary judgment on all claims asserted against them. Simultaneously, Wal-Mart moved for summary judgment on all claims against it. The parties have fully briefed the motions, which are now ripe for the Court's consideration.

## Analysis

### I.    Legal Standards

### A.    Summary Judgment

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent

summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

**B.      Section 1983**

Section 1983 provides a cause of action to individuals whose federal rights have been violated by those acting under color of state law. *Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). Section 1983 is not itself a source of substantive rights; rather, it merely provides a method for vindicating federal rights conferred elsewhere. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994). In order to state a claim under Section 1983, a plaintiff must (1) allege a violation of rights guaranteed by the United States Constitution or federal law, and (2) demonstrate the alleged deprivation was committed by a person acting under color of state law. *Doe*, 153 F.3d at 215.

**II.      Application**

**A.      Claims Against Officer Young**

Plaintiffs claim Officer Young used excessive force and violated the ADA. Officer Young argues he is entitled to summary judgment because the force used was not excessive under the circumstances, and, alternatively, he is entitled to qualified immunity. Officer Young also claims he cannot be held liable in his individual capacity for violating the ADA.

**1.      Excessive Force**

The Fourth Amendment confers a right to be free from excessive force during an arrest, investigatory stop, or other "seizure" of person. *Graham v. Connor*, 490 U.S. 386, 388 (1989). To establish a claim of excessive force under the Fourth Amendment, a plaintiff must show "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." *Cass v. City of Abilene*, 814 F.3d 721, 731 (5th Cir. 2016).

In alleging Officer Young used excessive force, Plaintiffs claim Officer Young "tackled the elderly and disabled Mr. Martinez, failing to control the descent of Mr. Martinez and slammed him hard onto the floor." Am. Compl. [#10] ¶ 4.9; Resp. Buda Defs.' Mot. [#51] at 2 (citing Mrs. Martinez's deposition). Plaintiffs also claim Officer Young's foot hit Mr. Martinez's legs. Resp. Buda Defs.' Mot. [#51] at 2.

Where, as here, there is a video recording of the events in question, "the Court should analyze the video evidence and reject the plaintiff's account only where the video evidence so clearly discredits the plaintiff's story that no reasonable jury could believe the plaintiff's version of the events." *Chacon v. City of Austin, Tex.*, No. A-12-CV-226-SS, 2013 WL 2245139, at *14 (W.D. Tex. May 21, 2013), *aff'd sub nom. Chacon v. Copeland*, 577 F. App'x 355 (5th Cir. 2014) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). The video evidence here clearly discredits Plaintiffs' version of the events.

The video clips demonstrate Mr. Martinez entered the AP office uninvited, blocked the doorway so no one could exit, raised his voice to Officer Young, and refused to exit the office when Officer Young ordered him to do so. Officer Young warned Mr. Martinez that if he did not step out of the office, then Officer Young would place Mr. Martinez outside and he would be arrested. Mr. Martinez responded "go ahead." Following Mr. Martinez's statement, Officer Young attempted to escort Mr. Martinez from the office. Officer Young placed his hand on Mr. Martinez's stomach and tried to guide Mr. Martinez out the office door. The video footages shows Mr. Martinez resisted, pushing Officer Young's hands away and pushing back against Officer Young in an effort to stay in the office. Despite Mr. Martinez's response, Officer Young continued to guide Mr. Martinez from the office by holding on to Mr. Martinez's arm. As the two men exited the office door, Mr. Martinez's feet slid out from under him. Officer Young's

legs did not touch Mr. Martinez's legs until Mr. Martinez was on the ground. The videos also show Officer Young endeavored to break Mr. Martinez's fall by holding onto Mr. Martinez's arm and lowering him to the ground.

Based on the video evidence, the Court rejects Plaintiffs' claims Officer Young tackled Mr. Martinez or pushed him to the ground.

The Court now turns to the elements of an excessive force claim. Mr. Martinez claims he broke several rips and sustained various other injuries, and Defendants do not dispute the existence of a constitutionally cognizable injury. The relevant inquiries, therefore, are whether Mr. Martinez's injury resulted from the use of clearly excessive and objectively unreasonable force. Under Fifth Circuit precedent, these inquiries are "often intertwined." *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012).

The Supreme Court has long recognized the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion of threat thereof to effect it. *Graham*, 490 U.S. at 396. Determining whether force is excessive or unreasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* Additional considerations that "may bear on the reasonableness or unreasonableness of the force used [include]: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015).

Moreover, the "reasonableness" of a particular use of force is judged from the perspective of the officer at the scene, rather than the 20/20 vision of hindsight. *Graham*, 490 U.S. at 396. "Not every push or shove even if it may later seem unnecessary in the peace of a judge's chamber violated the Fourth Amendment." *Id.* (citation and internal quotation marks omitted). It is well-established that an officer may consider a suspect's refusal to comply with instructions in assessing whether physical force is needed to effectuate the suspect's compliance. *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam).

Here, the totality of the circumstances do not support finding Officer Young's use of force was clearly excessive. In terms of the crime at issue, Officer Young was investigating allegations of shoplifting, a relatively trivial misdemeanor. But Mr. Martinez's uncooperative and confrontational demeanor gave rise to a reasonable belief Mr. Martinez posed a slight threat to Officer Young and the Wal-Mart employees present. Furthermore, it was reasonable for Officer Young to believe Mr. Martinez needed to be removed from the office to deescalate the situation. When Officer Young used slight force to effectuate his order for Mr. Martinez to exit the office, Mr. Martinez actively resisted, pushing Officer Young's hands away and pushing back.

The video recordings show Officer Young used very minimal force to counter Mr. Martinez's refusal to comply with a police order. Given the circumstances confronting him, Officer Young's use of force was objectively reasonable and not excessive as a matter of law. Therefore, the Court grants the Buda Defendants' motion for summary judgment on Plaintiffs' excessive force claim against Officer Young.

## 2. Qualified Immunity

Even if Officer Young's use of force was excessive, he is protected by qualified immunity.

Qualified immunity protects public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity analysis involves two considerations: "(1) whether facts alleged or shown by plaintiff make out the violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct." *Pasco v. Knoblauch*, 566 F.3d 572, 579 (5th Cir. 2009). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Lytle v. Bexar Cty.*, 560 F.3d 404, 410 (5th Cir. 2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001) *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009)). If public officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity. *See Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Though the Court views all facts in the most favorable light to Plaintiffs, the burden remains on Plaintiffs "to negate the [qualified immunity] defense once properly raised." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Assuming Officer Young's conduct violated Mr. Martinez's right to be free from excessive force, the Court finds Plaintiffs have failed to demonstrate Officer Young acted objectively unreasonably in light of clearly established law at the time of the incident. *See Surratt v. McClarin*, 851 F.3d 389, 392 (5th Cir.),

*cert. denied sub nom. Surratt v. McClaran*, 138 S. Ct. 147 (2017) (noting a defendant's actions violate clearly established law only when there is an identified "case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." (citation omitted)).

A reasonable officer could view Officer Young's conduct as lawful. As discussed above, the Supreme Court has announced that not every unnecessary push or shove is a violation of the Fourth Amendment and officer may consider a suspect's refusal to comply with instructions in determining if physical force is needed. *See Graham*, 490 U.S. at 396. The video evidence shows Officer Young used slight force to escort Mr. Martinez, who refused to obey Officer Young's order to leave, out of a room. Furthermore, the evidence shows Mr. Martinez actively resisted Officer Young's efforts to escort him out. A reasonable officer would not believe Officer Young's minimal use of force was unlawful given Mr. Martinez's refusal to comply with instructions.

Because Officer Young's actions were not objectively unreasonable in light of clearly established law, Officer Young is entitled to qualified immunity on Plaintiffs' excessive force claim.

### 3. Failure to Comply with ADA

Plaintiff also claims Officer Young violated Mr. Martinez's rights under the ADA by failing to provide reasonable accommodations for Mr. Martinez's disability.

The Court finds Plaintiffs' claims against Officer Young under § 1983 for violating the ADA are not permitted. The Fifth Circuit has stated in multiple unpublished opinions that individual defendants cannot be sued for violating the ADA. *See Nottingham v. Richardson*, 499 F. App'x 368, 376 n. 6 (5th Cir. 2012) (noting a plaintiff may not sue defendants in their

individual capacities under the ADA); *Rivera v. Dawson*, No. 05–41565, 2007 WL 1223914 (5th Cir. Apr. 25, 2007) (finding a plaintiff "may not bring a 42 U.S.C. § 1983 action for damages against a state official in his individual capacity to vindicate rights conferred by Title II of the ADA."). "A number district courts have similarly found the plain language of the ADA applies only to *public entities* and does not contemplate holding government employees liable in their individual capacities." *Albright v. Sheriffs Dep't Rapides Par.*, No. CIV.A. 12-2117, 2014 WL 4702579, at *8 (W.D. La. Sept. 22, 2014) (alteration in original) (quotation marks omitted) (collecting cases dismissing disability discrimination claims asserted against defendants in their individual capacities under 42 U.S.C. § 1983).

Therefore, the Court grants the Buda Defendants' motion for summary judgment concerning Plaintiffs' § 1983 claim against Officer Young for violating the ADA.

**B.     Claims Against the City**

Plaintiffs contend the City is liable under § 1983 for failing to adequately supervise and train Officer Young regarding the reasonable use of force and compliance with the ADA. The City has moved for summary judgment on Plaintiffs' claims against it, arguing Plaintiffs offer no evidence Officer Young received inadequate training or supervision.

In *Monell v. Department of Social Services*, the Supreme Court held that a municipality cannot be held liable under § 1983 on a theory of respondeat superior. 436 U.S. 658, 691 (1978). Municipalities and other local governments may incur § 1983 liability, however, where official policy or custom causes a constitutional violation. *Bennet v. City of Slidell*, 728 F.2d 762, 766 (5th Cir. 1984). For municipal liability to attach, the plaintiff must prove three elements: (1) a policymaker; (2) an official policy; and (3) a "violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)

13

(quoting *Monell*, 436 U.S. at 694). Official policy may be found in "written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009). A municipality's failure to train or supervise its employees may also constitute a "policy" when it "reflects a 'deliberate' or 'conscious' choice by a municipality." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). That is, a municipality's failure to train may constitute an actionable "policy" if, "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390.

Plaintiffs assert Officer Young's conduct at the Wal-Mart evinces the City's failure to adequately train and supervise its officers. To establish a § 1983 claim for failure to train and supervise, a plaintiff must show: "(1) the supervisor either failed to supervise or train a subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).

Plaintiffs point to no evidence showing the City's training program or supervision was inadequate, and in fact, Defendants produced evidence to the contrary. Specifically, the Buda Defendants offer evidence Officer Young underwent well over 1,000 hours of training before interacting with Mr. Martinez and Officer Young was certified as a peace officer by the Texas Commission on Law Enforcement. Police Records at 46–50. Where training complies with state law requirements, the Fifth Circuit holds a plaintiff must show "this legal minimum of training

14

was inadequate to enable the [officers] to deal with 'usual and recurring situations' faced by jailers and peace officers." *Benavides v. Cty. of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992); *see also Sanders–Burns v. City of Plano*, 594 F.3d 366, 382 (5th Cir. 2010) (affirming grant of summary judgment where the officers completed state-mandated training program and the plaintiff did not allege the state requirements were inadequate). Plaintiffs offer no evidence to show Officer Young's state-certified training was inadequate.

Rather, Plaintiffs only rely on Officer Young's actions in this case and the differing opinions of supervisors within the Buda Police Department on whether Officer Young used force and whether his use of force was reportable. Resp. Buda Defs.' Mot. [#51] at 8–9. But, as this Court held in *Chacon*, the actions of particular officers "on this sole occasion do not prove [the defendant-municipality's] significant training efforts are inadequate." *Chacon*, 2013 WL 2245139, at *6. And the opinions of Buda Police Department supervisors merely demonstrate reasonable officers possessed different thoughts on how to measure an officer's use of force and when a "use of force" form should be completed. Such evidence does not show with specificity how particular training or supervision is defective. *See Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) ("For liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective.")

Moreover, Plaintiffs offer no evidence establishing the City's training or supervision was the "moving force" behind Plaintiffs' claimed constitutional injuries. Like the Court found in *Chacon*, summary judgment is warranted here because there is no evidence Officer Young engaged in his actions because City training or supervision left him ill-equipped to handle the situation. *See id.* at *7. The City is therefore entitled to summary judgment.

## C. Claims Against Wal-Mart

Plaintiffs claim Wal-Mart falsely imprisoned Mrs. Martinez, Wal-Mart employees acted negligently toward Mr. Martinez, and Wal-Mart negligently hired, trained, and supervised its employees. Wal-Mart moves for summary judgment on all of Plaintiffs' claims against it.

### 1. False Imprisonment

To establish a claim for false imprisonment under Texas law, a plaintiff must show the defendant (1) willfully detained the plaintiff, (2) without her consent, and (3) without the authority of the law. *Hodgson v. United States*, No. SA:13-CV-702, 2014 WL 4161777, at *12 (W.D. Tex. Aug. 19, 2014) (citing *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex. 1985)). If an alleged detention was performed with the authority of law, then no false imprisonment occurred. *Wal-Mart Stores, Inc. v. Resendez*, 962 S.W.2d 539, 540 (Tex. 1998).

Wal-Mart alleges it had authority of law to detain Mrs. Martinez under the shopkeeper's privilege. The shopkeeper's privilege "expressly grants an employee the authority of law to detain a customer to investigate the ownership of property in a reasonable manner and for a reasonable period of time if the employee has a reasonable belief that the customer has stolen or is attempting to steal store merchandise." *Resendez*, 962 S.W.2d at 540 (citing TEX. CIV. PRAC. & REM. CODE § 124.001).

Plaintiffs do not dispute that Mrs. Martinez was detained in a reasonable manner and for a reasonable manner of time. *See* Resp. Wal-Mart's Mot. [#50] at 9–10. Plaintiffs only argue there is a fact issue concerning whether the Wal-Mart employees had a reasonable belief Mrs. Martinez had stolen or was attempting to steal store merchandise. *Id.* Specifically, Plaintiffs contend there was a reasonable explanation for Mrs. Martinez's behavior and the Wal-Mart employees' failure to ask for a receipt was unreasonable. *Id.*

However, whether a reasonable explanation for Mr. Martinez's behavior existed or was possible is not the standard. The standard for the shopkeeper's privilege focuses on whether the employee's belief of theft or potential theft was reasonable. *Resendez*, 962 S.W.2d at 540. Plaintiffs provide no evidence—and do not even attempt to argue—that the belief Mrs. Martinez had stolen or was attempting to steal Wal-Mart merchandise was unreasonable. *See* Resp. Wal-Mart's Mot. [#50] at 9–10.

Based on the undisputed facts, it was reasonable for the Wal-Mart employees to believe Ms. Martinez had stolen and was attempting to steal Wal-Mart merchandise. First, it is undisputed Mrs. Martinez placed over twenty items, merchandise totaling over $160.00 in value, in her scooter basket. It also undisputed that one of those items was a bunch of bananas. Video evidence confirms Mrs. Martinez ate a banana while shopping in Wal-Mart. Video evidence also confirms Mrs. Martinez attempted to leave the Wal-Mart building without paying for the majority of items in her basket.

Based on this information alone, it was reasonable for the Wal-Mart employees to believe Mrs. Martinez had stolen and was attempting to steal Wal-Mart merchandize. *See Resendez*, 962 S.W.2d at 540 (holding it was reasonable for a store employee to believe a customer had stolen from the store where the customer picked up peanuts while in the store, was seen eating from a bag of peanuts in the store, and attempted to exit the store without paying for the peanuts). And, while Mrs. Martinez did possess two receipts, it is undisputed the receipts accounted for only two items totaling $20.67 in value.

Because the Wal-Mart employees had a reasonable belief Mrs. Martinez had stolen or was attempting to steal Wal-Mart merchandise and it is not disputed Mrs. Martinez was detained in a reasonable manner and for a reasonable time, Walmart is entitled to the shopkeeper's

privilege. Therefore, Mrs. Martinez's detention was performed with the authority of law and no false imprisonment occurred. Wal-Mart is thus entitled to summary judgment on Plaintiffs' false imprisonment claim.

### 2.    Negligence Toward Mr. Martinez

Plaintiffs allege the Wal-Mart employees "failed to exercise reasonable care to avoid a foreseeable risk of harm to [Mr. Martinez] and failed to take affirmative action to control or avoid increasing the danger from a condition . . . at least partially created by the conduct of Wal-Mart's employees." Am. Compl. [#10] ¶ 6.6. To prevail on a negligence claim under Texas law, a plaintiff must show "(1) a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) an actual injury to the plaintiff; and (4) . . . the breach was the proximate cause of the injury." *Levels v. Merlino*, 969 F. Supp. 2d 704, 715–16 (N.D. Tex. 2013) (quoting *Gutierrez v. Excel Corp.*, 106 F.3d 683, 687 (5th Cir.1997)).

Here, Plaintiffs assert the Wal-Mart employees had a duty to avoid foreseeable risk of injury to others. Resp. Wal-Mart's Mot. [#50] at 3–4. Plaintiffs contend the employees breached that duty when its employees (1) failed to follow Wal-Mart's own policies, (2) unreasonably accused Mrs. Martinez of shoplifting, and (3) provided Officer Young with limited information. *Id.* at 3–7. Thus, Plaintiffs claims Wal-Mart should be held liable for its employees' negligence.

First, in arguing the Wal-Mart employees were negligent because they did not follow company policies, Plaintiffs argue the duty of care for Wal-Mart employees is based on Wal-Mart's own policies. But the failure to comply with company policies does not create a separate basis for liability. *Owens v. Comerica Bank*, 229 S.W.3d 544, 547 (Tex. App.—Dallas 2007, no pet.) ("The Texas Supreme Court has refused to create a standard of care or duty based upon internal policies, and the failure to follow such policies does not give rise to a cause of action in

favor of customers or others." (citing *FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 92 (Tex. 2006)). Therefore, an employee's failure to follow company policies does not support finding breach.

Second, as examined above for Plaintiff's false imprisonment claim, the Wal-Mart employees possessed a reasonable belief Mrs. Martinez had stolen or was attempting to steal Wal-Mart merchandise. Therefore, the Wal-Mart employees did not unreasonably accuse Mrs. Martinez of shoplifting.

Third, in alleging the Wal-Mart employees provided Officer Young with limited information, Plaintiffs claim the Wal-Mart employees should have informed Officer Young that Mr. Martinez was an elderly man who was wearing a back brace and had not threatened anyone. Resp. Wal-Mart's Mot. [#50] at 7. Plaintiffs also argue an employee's statement Mr. Martinez was raising "nine kinds of hell" negligently escalated the situation. *Id.* But Plaintiffs fail to show how these allegations correspond to their negligence claim. Specifically, Plaintiffs offer no evidence or authority indicating the Wal-Mart employees had a duty to share more detailed observations with Officer Young. Plaintiffs also point to no evidence demonstrating Officer Young entered the Wal-Mart with insufficient information or that he viewed the situation as escalated before interacting with Mr. Martinez. In fact, Officer Younger did not attempt to interact with Mr. Martinez until Mr. Martinez entered the AP Office uninvited.

Simply put, Plaintiffs offer no evidence and no authority supporting its allegation the Wal-Mart employees breached any duty to Plaintiffs. Wal-Mart is therefore entitled to summary judgment on Plaintiffs' general negligence claim.

### 3. Negligent Hiring, Training, and Supervision

Texas law authorizes recovery where an employer's direct negligence in hiring, training, or supervising an incompetent employee whom the employer knows, or by the exercise of reasonable care should have known, was incompetent or unfit creates an unreasonable risk of harm to others. *Garcia v. Hospice of El Paso*, No. EP-02-CA-268-DB, 2003 WL 21961177, at *5 (W.D. Tex. May 20, 2003) (citing *Wise v. Complete Staffing Services, Inc.*, 56 S.W.3d 900, 902 (Tex. App.—Texarkana 2001, no pet.)). To prevail on a claim of negligent hiring, training, or supervision, a plaintiff must prove (1) the employer owned the plaintiff a legal duty to protect against injury, (2) the employer breached that duty, (3) and the breach proximately caused plaintiff's injury. *Id.*

Here, it is undisputed Wal-Mart owed Plaintiffs a duty to hire, train, and supervise competent employees. But Wal-Mart argues Plaintiffs cannot establish Wal-Mart breached that duty or that any alleged breach caused Plaintiffs' injuries. The Court agrees.

First, Plaintiffs supply no evidence Wal-Mart breached its duty in hiring, training, or supervising its employees. Specifically, Plaintiffs present no evidence any of the Wal-Mart employees were unfit for their positions or how the training Wal-Mart provided its employees was inadequate. *See Garcia,* 2003 WL 21961177, at *5 (explaining the duty to hire, train, and supervise competent employees includes "inquiry into the qualifications of candidates for employment, the termination of employees who are not qualified or are unfit, and the adequate supervision and training of employees" (citing *Carney v. Roberts Investments Co.*, 837 S.W.2d 206, 211 (Tex. App.—Tyler 1992, writ denied)). Plaintiffs also offer no evidence showing how Wal-Mart failed to adequately supervise its employees. Plaintiffs' mere conclusory allegations cannot create a fact issue to withstand summary judgment. *See Turner*, 476 F.3d at 343.

By contrast, Wal-Mart points to evidence its employees professionally handled the detention of a suspected shoplifter. The video evidence demonstrates the Wal-Mart employees asked Mrs. Martinez to accompany them to the AP office, inventoried Mrs. Martinez's basket, and calmly talked with both Plaintiffs until Officer Young arrived. As the only evidence in the record suggests the Wal-Mart employees competently interacted with Plaintiffs, Wal-Mart is entitled to summary judgment on Plaintiffs' claim for negligent hiring, training, or supervision.

Furthermore, even if Plaintiff provided evidence Wal-Mart breached its duty, Plaintiffs offer no evidence any alleged breach caused Plaintiff's injuries. In order to establish proximate cause, a plaintiff must show that the defendant's actions in hiring, supervising, or retaining an employee were the cause-in-fact of the injuries and the resulting injuries were a foreseeable consequence. *McDorman ex rel. Connelly v. Texas-Cola Leasing Co. LP, LLP*, 288 F. Supp. 2d 796, 804 (N.D. Tex. 2003) (citing Houser v. Smith, 968 S.W.2d 542, 545 (Tex. App.—Austin 1998, no writ)).

Here, the evidence only shows the Wal-Mart employees' actions in detaining Mrs. Martinez furnished a condition which made Plaintiffs' injuries possible. Such evidence is insufficient to establish cause-in-fact. *See id.* at 805 (citing *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 477–78 (Tex. 1995)). Plaintiffs also present no evidence their injuries were a foreseeable consequence of Wal-Mart's hiring, training, or supervision. Specifically, Plaintiffs put forward no evidence or facts showing Wal-Mart should have reasonably anticipated its actions in hiring, training, or supervising its employees could cause Plaintiffs' injuries. *See Garcia*, 2003 WL 21961177, at *6 (holding plaintiff failed to prove foreseeability where there was no evidence the employer knew or should have known the employee was incompetent).

Because Plaintiffs offer no evidence Wal-Mart breached its duty or any such breach caused Plaintiffs' injuries, Wal-Mart is entitled to summary judgment on Plaintiffs' negligent hiring, training, and supervision claim.

### Conclusion

For the reasons explained in this order, Defendants are entitled to judgment as a matter of law on all of Plaintiffs' claims.

Accordingly,

IT IS ORDERED that Defendants the City of Buda and Officer Demerriel Young's Motion for Summary Judgment [#43] is GRANTED; and

IT IS FINALLY ORDERED that Defendant Wal-Mart Stores Texas, LLC's Motion for Summary Judgment [#47] is GRANTED.

SIGNED this the _12th_ day of February 2018.

_Sam Sparks_
SAM SPARKS
UNITED STATES DISTRICT JUDGE